1          UNITED STATES DISTRICT COURT FOR THE
                NORTHERN DISTRICT OF OKLAHOMA
2

3
UNITED STATES OF AMERICA,          )
4                                  )
              PLAINTIFF,           )
5                                  )
vs.                                )   Case No. 21-CR-361-JFH
6                                  )
                                   )
7  CAMERON KELLY McABEE,           )
                                   )
8              DEFENDANT.          )

9

10

11
                     TRANSCRIPT OF
12                SENTENCING HEARING
           BEFORE THE HONORABLE JOHN F. HEIL III
13            UNITED STATES DISTRICT JUDGE
                  AUGUST 25, 2023
14

15

16

17             A P P E A R A N C E S

18
FOR THE PLAINTIFF:              CHRIS NASSAR and
19                              ASHLEY ROBERT
                                U.S. Attorney's Office
20                              110 W. 7th St., Ste 300
                                Tulsa, OK  74119
21

22  FOR THE DEFENDANT:          JOHN M. DUNN
                                Attorney at Law
23                              616 S. Main, Ste 206
                                Tulsa, OK 74119
24

25  Transcribed by:  Laura Griffin, RMR-CRR, Laura_Griffin@oknd.uscourts.gov

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 2 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 2

2

 1   PROCEEDINGS:

 2        ************************************

 3       DEPUTY COURT CLERK:   Call case number

 4   21-CR-361-JFH, United States of America versus Cameron Kelly

 5   McAbee.

 6     Counsel, make your appearance for the record.

 7       MR. NASSAR:  Chris Nassar and Ashley Robert for the

 8   United States, Your Honor.

 9       THE COURT:  Good morning, counsel.  Is this

10   Ms. Robert's first time in this court?

11       MR. NASSAR:  It is, Your Honor.

12       THE COURT:  All right.  Well welcome to you.

13       MS. ROBERT:  Thank you, Your Honor.

14       MR. DUNN:  John Dunn for Defendant McAbee.  He is

15   present at counsel table in custody.

16       THE COURT:  Good morning, Mr. Dunn, and good

17   morning, Mr. McAbee.

18     This case comes on for sentencing today.  I note that

19   defendant previously entered a plea of guilty to Counts 1, 2,

20   3 and 4 of the indictment before the United States Magistrate

21   Judge.  The defendant both orally consented and signed a

22   written consent to proceed before the magistrate judge.

23     The court finds that this plea was voluntary and

24   supported by the factual record and therefore the court

25   affirms the finding of guilt and accepts defendant's guilty

1   plea before the magistrate judge.

2        This court has reviewed the victim impact statement

3   submitted by S.M.'s family as well as the statements provided

4   on behalf of eight other victims related to the child

5   pornography charges.

6        Counsel for the government, were the victims notified as

7   well as their representatives of this hearing and given the

8   opportunity to attend?

9            MR. NASSAR:  Yes, Your Honor, and the mother of the

10  main victim in this case, Courtney McAbee, is present and

11  wishes to make a statement at the appropriate time.

12           THE COURT:  All right.  Thank you very much.  I'll

13  certainly provide an opportunity for her to do that in just a

14  moment.

15       The court has reviewed defendant's objections to the

16  presentence report at docket numbers 46 and 50 and notes that

17  defendant has two objections outstanding following the

18  probation office revision to the presentence report.

19       Mr. Dunn, would you like to be heard further regarding

20  defendant's outstanding objections?

21           MR. DUNN:  Your Honor, I believe that the issues are

22  outlined sufficiently in the objections for the court and we

23  would simply contend that the broad overview is there are

24  actually two things that are taking place here and they should

25  be considered separately for purposes of sentencing and that

1   would result in lower guidelines.

2          THE COURT:  All right.  Thank you, sir.

3       Mr. Nassar, do you wish to be heard regarding the

4   objections?

5          MR. NASSAR:  Your Honor, we would just note that I

6   think the revisions made by the probation office speak to all

7   of those objections appropriately and would moot the concerns

8   cited in those objections.  In any case I don't believe

9   there's a lot of guideline determination in those objections

10  either way and I would just stand behind that we support the

11  probation office's position on those.

12         THE COURT:  As noted the defendant has two

13  objections outstanding following the probation office's

14  revisions to the presentence report.  First the defendant

15  objects to paragraph 26 in the utilization of U.S. Sentencing

16  Guideline Section 2.6 as the applicable guideline for

17  calculation purposes.

18      Specifically defendant contends that the offenses should

19  be split into two groups rather than a single group and

20  utilize U.S. Sentencing Guideline Section 2.1 and 2.2

21  respectively.  Defendant contends that such multi-count

22  adjustment results in a total offense level of 37 after an

23  judgment for acceptance of responsibility.

24      The court notes that Count 1, child exploitation

25  enterprise, in violation of Title 18 U.S.C. Section 2252A(g)

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 5 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 5

5

1   is specifically listed in the statutory provision of the

2   commentary at U.S. Sentencing Guideline Section 2G2.6.

3   Therefore, this court believes the guideline is applicable

4   here.  Count 1 as listed in the indictment references Counts 2

5   through 4 as three separate incidents involving more than one

6   victim as part of a series of felony violations contemplated

7   under Count 1.  Therefore Counts 2 through 4 are properly

8   grouped as with Count 1 as they constitute conduct that is

9   treated as specific offense characteristics within the

10  guideline applicable to Count 1.

11       Within the enterprise several victims, including the

12  defendant's own daughter, had not attained the age of 12 years

13  old at the time of the offense conduct and therefore the

14  offense level is increased by four levels pursuant to U.S.

15  Sentencing Guideline Section 2G2.6(b)(1)(A).  Next, defendant

16  was the parent of one of the minors involved in the offense

17  and therefore the offense level is increased by two levels

18  pursuant to U.S. Sentencing Guideline Section 2G2.6(b)(2).

19       The enterprise offense also involved conduct described in

20  Title 18 U.S.C. Section 2241(a) or (b), including the use of

21  bondage and restraints, and, therefore, the offense level is

22  increased by two levels pursuant to U.S. Sentencing Guidelines

23  Section 2G2.6(b)(3).

24       Finally, a computer or interactive service was used in

25  furtherance of the offense and therefore the offense level is

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 6 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 6

6

1  increased by two levels pursuant to U.S. Sentencing Guideline

2  Section 2G2.6(b)(4).  Accordingly defendant's first objection

3  is overruled.

4      In his second objection defendant objects to paragraph 34

5  of the presentence report in the enhancement at U.S.

6  Sentencing Guideline Section 4B1.5.  Defendant contends that

7  while Counts 1 and 2 are covered sex crimes, defendant did not

8  engage in a pattern of activity involving the coercion and

9  enticement of a minor.

10      The court notes that the presentence report dated July

11  3rd, 2023, and then the report revised August 5, 2023, amended

12  paragraph 34 to remove language regarding coercion and

13  enticement and the new paragraph 35 and replace it with

14  language regarding defendant's engagement in a pattern of

15  activity involving production of child pornography.

16      Pursuant to U.S. Sentencing Guideline Section 4B1.5(b)(1)

17  five levels should be added to the total offense level if the

18  instant offense of conviction is a covered sex crime and the

19  defendant engaged in a pattern of activity involving

20  prohibited sexual conduct.  Both Counts 1 and 2 fall under

21  chapter 110 and are covered sex crimes pursuant to U.S.

22  Sentencing Guidelines Section 4B1.5 comment note 2.

23      Further production of child pornography is specifically

24  enumerated as prohibited sexual conduct under U.S. Sentencing

25  Guideline Section 4B1.5 comment note 4(A)(ii).  The

**United States District Court**

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 7 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 7

7

1   presentence report describes activity involving the production

2   of child pornography occurring between July 1, 2019, and July

3   26, 2021.  The court finds that this supports a finding that

4   defendant engaged in a pattern of activity involving

5   prohibited sexual conduct.  Therefore defendant's second

6   objection is overruled.

7        Having overruled the objections the court adopts the

8   presentence report and it will form the factual basis for the

9   court's sentence today.

10       I must make an accurate determination of the applicable

11  sentencing range under the United States Sentencing

12  Guidelines.  The government has filed a motion for one-level

13  reduction for acceptance of responsibility at docket number

14  51.  That motion is granted.  And defendant's acceptance of

15  responsibility has been taken into account in the calculation

16  of the advisory guideline range.

17       In this case based upon the offenses to which the

18  defendant pled guilty, the specific offense characteristics,

19  and an adjustment for acceptance of responsibility,

20  defendant's total offense level is 43, his criminal history

21  category is I.

22       Under the applicable guideline provisions the sentencing

23  range for imprisonment is life.  The sentencing range for

24  supervised release is 5 years to life per count and the

25  defendant is not eligible for probation.  The court may also

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 8 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 8

8

1  impose a fine between $50,000 and $500,000.  Restitution is

2  mandatory.

3       I would note in this case that the offense level is 43

4  because that is the highest offense level.  If it wasn't the

5  highest offense level, then the offense level would have --

6  would have been 47.

7       So I am -- I note that the plea agreement adequately

8  reflects the seriousness of the offense and will not undermine

9  the statutory purposes of sentencing and therefore the court

10 accepts the plea agreement.

11      I am familiar with the sentencing memorandum and the

12 amended sentencing memorandum filed on behalf of the defendant

13 at docket numbers 45 and 48.  In the memoranda defendant

14 requests a sentence that is only great enough to impose a just

15 punishment and no more, which the court construes as an

16 unspecified downward variance.

17      The court has also read and considered the government's

18 sentencing memorandum at docket number 52 requesting a

19 guideline sentence of life imprisonment.

20      Counsel, do you wish to make any other statements

21 regarding sentence?

22           MR. NASSAR:  Yes, Your Honor, just briefly.

23           THE COURT:  All right.  You may proceed and you may

24 use the podium, counsel.

25           MR. NASSAR:  Your Honor, the United States would

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 9 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 9

9

1   like to underscore a few things in this case.  The first is

2   that the child exploitation enterprise charge itself.  An

3   exceedingly rare charge in federal court and unprecedented in

4   this district as far as I am aware.  And the reason for that

5   is it requires such an expansive involvement in child

6   exploitation.

7       The defendant in this case not only engaged in a wide

8   expansive range of exploiting his own daughter and

9   facilitating the exploitation of children around the world,

10  but he was a leader and organizer of that conduct.  He was an

11  administrator of this group.  He approved members to join this

12  group, and fortunately one of those members ended up being an

13  undercover FBI agent which led to the unraveling of this

14  group.

15      In the government's sentencing memo we stated that to

16  date there are at least 20 defendants apprehended as part of

17  the FBI's investigation into this and at least 20 victims.

18      I've spoken with FBI agents and they continue to follow

19  leads on this case.  It is now actually up to 42 defendants

20  connected to this group who have either been arrested or

21  subject to the investigation, and over 100 real child victims

22  whose abuse was facilitated by the defendant in this case.

23      And that is in countries around the world, Your Honor.

24  The defendant delivered harm not only on his own daughter

25  S.M., those closest, the daughter -- the child closest to him,

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 10 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 10

10

1    but over 100 children around the world.

2         Because of that expansive harm and because of his

3    expansive involvement and his role in that, that he was a lead

4    facilitator, an administrator, the government requests a life

5    sentence in this case, Your Honor, and we would stand on our

6    memo barring any questions from the court.

7              THE COURT:  Thank you, Mr. Nassar.

8         And, Mr. Dunn, would you like to make any statements

9    regarding sentencing, sir?

10             MR. DUNN:  Yes, Your Honor.  And with the court's

11   permission, there was a motion for nonguideline sentence I

12   would like to incorporate.

13             THE COURT:  Certainly, you may do that.

14             MR. DUNN:  Thank you.  Your Honor, before the court

15   today is Mr. McAbee and he comes here for sentencing.  We had

16   previously discussed in the sentencing memorandum the facts of

17   the crime and I knew the government would expound upon that

18   and they have.

19        However, the thing that I would ask the court to

20   consider, we had filed a number of objections essentially

21   looking at attempting to come up with a 30 year or even a 20

22   year sentence as opposed to life.  The reason for that is life

23   in the federal system as this court is well aware is a life

24   without parole.  You leave one way.

25        And when we consider Mr. McAbee's previous history, him

1 being -- this -- this is an aberration in his otherwise

2 crime-free life. He started off as a child or as a -- when he

3 graduated high school, he was in the top 100 accounting

4 students in the nation.

5 He went to work at with Quik Trip in the accounting

6 department even though he had no formal education in

7 accounting other than being in high school and being with his

8 family member that was a certified public accountant and

9 working in that office.

10 He is a one job career person. He worked at Quik Trip.

11 He worked his way up through the ranks becoming store manager,

12 being shipped to other states to open stores, and there was a

13 lot of trust that was placed in him.

14 Since he's been in custody, as the sentencing memorandum

15 shows, he has engaged in self help. He has produced more

16 certificates than I think I've produced to the court for any

17 other defendant that I've represented in my time here. He

18 seems to be certainly motivated. He recognizes that what he's

19 done is wrong and he's motivated to try and correct that

20 problem within his life.

21 Our request to the court in the sentencing memorandum

22 that the court noted was unspecified request, and that based

23 upon the objections that were outstanding and the motion for

24 downward -- or for nonguideline sentence, it seemed

25 appropriate to end that there, and then in the nonguideline

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 12 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 12

12

1   sentence ask the court to consider a sentence at the statutory

2   minimum which is 20 years.

3        However, if the court based upon the new evidence -- or

4   the statements of the government about the far-reaching nature

5   of the crime, we would ask the court to consider at least a 30

6   year sentence which would give Mr. McAbee the opportunity to

7   get out.  It would still provide adequate deterrence, adequate

8   respect for the law, and would give him an opportunity to put

9   into practice the things that he learns in prison as far as

10  him being rehabilitated.  So that would be the request of the

11  defendant.

12        THE COURT:  All right.  Let me provide Mr. McAbee

13  the opportunity to make any statements if he wishes to do so.

14  If he wishes to do so, he may approach the podium and,

15  counsel, you may join him.

16      Mr. McAbee, do you wish to make a statement, sir?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  You can proceed when you're ready and

19  take as much time as you need, sir.

20        THE DEFENDANT:  Okay.  Your Honor, I just, I would

21  like to apologize for what I've done.  I know that what I did

22  was wrong and I did not act with circumspection.  I didn't

23  think that my actions could hurt other people like it

24  obviously has.  I've hurt the people I hurt -- or I love most

25  in this life and I'm truly sorry to them and to everyone

1    that's caused suffering because of me.

2           THE COURT:  All right.  Thank you for your

3    statement, sir.  You may have a seat.

4       Mr. Nassar, this would be a good opportunity to have the

5    victim's mother make a statement if she wishes or any other

6    victims.

7           MR. NASSAR:  Thank you, Your Honor.

8           THE COURT:  Good morning, ma'am.  Would you just

9    please tell us your name for the record.  And I can tell this

10   is going to be hard for you already, it's going to be really

11   hard, but take as much time as you need.  And have you already

12   written something out?

13          COURTNEY McABEE:  I did.

14          THE COURT:  Okay.  And that's fine too, but just

15   understand when people write some things out sometimes and

16   they bring it to court, this is a situation that people don't

17   do very often so they tend to read it quickly.

18          COURTNEY McABEE:  Yeah.

19          THE COURT:  And I want to encourage you to read it

20   slowly because I want to be able to understand and hear

21   everything you have to say because what you have to say is

22   important to me.  So proceed whenever you're ready and take as

23   much time as you need.

24          COURTNEY McABEE:  Thank you so much.  My name is

25   Courtney McAbee.  I'm the mother of the main victim that

1    Cameron affected.

2        This is really hard.  I haven't seen him since he was

3    arrested so it's really difficult to face him today and to

4    hear him, the things that they're objecting to.  It just --

5    it's hard.

6        I truly don't think it's possible to put into words the

7    amount of damage, pain and trauma that Cameron's crimes

8    inflicted on my daughter and me and both of our families.

9    We're two years out from his arrest and we still encounter

10   some trauma response or complication from his actions

11   regularly.

12       I know that after speaking to so many professionals this

13   will be continuing for not only years to come but for the rest

14   of our lives.  I cannot explain to you how it felt to come

15   home from a normal day to find out the person that I knew and

16   trusted for ten years wasn't that person at all.

17       I don't know how to begin to describe the pain of being a

18   mother, learning that her daughter was being groomed,

19   sexualized, abused and violated, held down and forced to take

20   nude photos and expose her vagina for her father's sexual

21   pleasure.  And then to find out that she was broadcasted

22   online for predators all over the world to see.

23       My daughter would have been only 15 months old when he

24   began sexualizing and abusing her and starting to engage in

25   these activities online.  This is how little she was.  15

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 15 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 15

15

1   months old.  She was a baby.  She's still in diapers at that

2   time.  She was still breastfeeding and she only learned how to

3   walk three months before he started engaging in those

4   activities.

5        She was completely dependent on us as her parents for

6   support and for safety when Cameron decided to sexually abuse

7   and exploit her.  He took advantage of the fact that she was

8   unable to speak or advocate for herself and started grooming

9   her from a young and vulnerable age.

10       He effectively ruined her ability to ever have a normal

11  life again.  These images will circulate the internet forever

12  and she will always have to face the reality of what her own

13  father did to her.

14       She continues to struggle daily with feeling safe now.

15  She continues to have fears of Cameron when we talk about him.

16  She's scared of the world in general.  She's terrified that

17  someone is going to see her naked if she changes clothes or

18  showers in her own home which is a place that is supposed to

19  be safe.

20       She has to take medication for bowel issues that her

21  doctors and therapists believe are a consequence of his sexual

22  abuse.  She has a diagnosis of PTSD and anxiety which a

23  five-year-old should never have.

24       I don't know how to describe to you the massive amount of

25  insecurity and violation that was also brought into our lives

1  after learning that hidden cameras were placed in every single

2  room of our home.  I can't describe the disbelief as I watched

3  FBI agents pull dozens of cameras out of bathroom fans, above

4  showers, above toilets, out of outlets in the walls, alarm

5  clocks, DVD players and bluetooth speakers.

6      How violating it was to know that every time I used the

7  bathroom or she used the bathroom, showered, changed clothes,

8  talked on the phone, talked to my therapist online when I did

9  therapy, or anything private, it was recorded, watched and

10  used against us.

11      I can't describe the financial strains that his crimes

12  caused, one of which was $10,000 worth of repairs needed in

13  our home because there was so much electrical damage and fire

14  hazard due to him splicing wires in the attic, crawl spaces,

15  and the wall outlets, and all of that had to be repaired

16  before I could even sell the home.

17      When we thought things couldn't get worse, we found out

18  Cameron also planned and executed other ways to violate the

19  privacy of other children in our family.  He abused all of the

20  trust that the family had had for him.

21      He brought bluetooth speakers fixed with hidden cameras

22  to my brother's home, who was also his best friend, in order

23  to capture nude photos of my niece in her bedroom and

24  bathroom.  He planned and installed hidden cameras

25  strategically in our home to capture nude photos of other

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 17 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 17

17

1  family and other friend's children changing clothes in our

2  house when they came to swim.

3      His level of manipulation and deceit is just unmatched.

4  Cameron may have pled guilty to his crimes but in no way is he

5  taking accountability for his actions.  He continues to lie,

6  manipulate and minimize his actions in this case.

7      I don't feel that he is truly accepting or acknowledging

8  his crimes based on the statements that he's making in his

9  memorandum and in his objections.  He made multiple statements

10  such as "images were only taken on hidden cameras" or "my

11  daughter wasn't even aware the images were being taken of

12  her."  All of which are lies.

13      It's in the evidence that he took many, many, up-close

14  photos of my daughter.  He had her hold her vagina open and

15  expose herself and pose suggestively for the camera.  He

16  bragged about pinning her down as she fought and forcing her

17  to take pictures and gave her things like lollipops while he

18  abused her.  You cannot tell me that that's not coercing her.

19  You can't tell me she wasn't aware and you cannot tell me that

20  she didn't know what was being done to her body.

21      In addition to minimizing his actions and abuse to my

22  daughter, he continues to minimize his involvement in the

23  online group.  He now is even shaking his head in the

24  courtroom as they were talking about he was an administrator.

25      He admitted openly on his arrest that he was an

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 18 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 18

18

1   administrator.  He bragged to his father several times on the

2   phone about helping the FBI with their investigation because

3   he knew details about these people because of his role.

4       He made the rules and regulations and he cleared other

5   pedophiles for entry into the group but somehow he's making

6   statements and shaking his head, making statements such as he

7   was merely just a group member like everyone else and shared

8   the same roles.

9       I was with Cameron for a very long time.  Ten years is a

10  long time to be with someone.  I was a victim to his control

11  and abuse and I know that he is severely manipulative.  He

12  emotionally and verbally abused me for years, gas lit me and

13  made me feel crazy in order to control me and keep me from

14  ever being able to catch on to what he was doing to these

15  children or my daughter.

16      And not a single person who knew him saw him doing any of

17  this.  Everybody trusted him.  He is extremely good at

18  manipulating and controlling other people's perspectives of

19  him.  He continues to exhibit these behaviors by lying in his

20  memorandum to the court.  He's trying to portray himself as a

21  remorseful and healed person who deserves empathy and a

22  reduced time in prison.

23      Cameron stated he was an avid church goer and all of the

24  documents that say that he's continuing his faith in jail.  As

25  someone who was with him for ten years, he never once stepped

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 19 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 19

19

1   foot into a church.  He mocked my family behind their back for

2   Christian beliefs.

3       Cameron stated he signed over all of his assets to me and

4   75 percent of his retirement the day he was arrested because

5   he knew my daughter needed support, and this is 100 percent

6   false.  Two years later I still don't have the retirement

7   money because of how much he's interfered with the divorce.

8   He fought it for at least a year and a half before I could

9   finalize my divorce, and after he was arrested he told his

10  father he needed to keep the money for when he got out of

11  jail.  He is selfish.  He didn't sign everything over for my

12  daughter's sake and he purposefully tried to continue to abuse

13  us.

14      Cameron also stated that his life took an unpredictable

15  turn when he began accessing these online groups.  But what I

16  want to say to you today is in no way was your life

17  unpredictable during the time that you chose to abuse my

18  daughter and all of these other children.

19      You woke up every day for over two years and made a

20  choice to log in to those sites.  Every day you chose to

21  involve yourself in these groups and represent yourself as an

22  administrator.  Every day you chose to provide a platform for

23  others to sexually abuse their children and encourage others

24  to bind their children's wrists and ankles and forcibly rape

25  them on camera for our own pleasure.

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 20 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 20

20

1        Every day you chose to sexually abuse my daughter.  Every

2   day you chose to manipulate and to control me in order to get

3   away with your crimes.  You chose to take the time and effort

4   to plan and install hidden cameras in our home.  Every day you

5   chose to violate our privacy.  Every day you chose to watch

6   the hours of footage from the cameras, to clip hundreds of

7   videos and pictures from them and to send them to multiple

8   predators and wife-swapping groups online.  You made choices

9   every day to be a liar and a predator and your life was not

10  unpredictable, ours was.

11       I can continue to go on into more details in his lies but

12  the list is just too long.  My point is to say to you today

13  that Cameron is a calculated liar, a manipulator and abuser.

14  He continues to show this in his efforts to manipulate the

15  court.

16       All of this is to say that I don't believe for one second

17  that he is remorseful or changed.  I firmly believe that if he

18  were to ever, ever leave prison, that he will abuse more

19  children.  He is dangerous and I believe that it's within your

20  power to ensure that he never has access to another child or

21  child pornography again.

22       There was one good statement in his memorandum.  Time is

23  the only thing that each of us possess that can never be

24  recovered.  S.M. and I along with all of our families and many

25  other children in this case will never fully recover.  They

1   will continue to haunt us every day for the rest of our lives.

2   We will never get back the years of abuse he inflicted on us.

3   We will never get back the decades of trauma we've yet to face

4   as a consequence of his actions and it's only fair that for so

5   many lives that were destroyed that Cameron faces equal time

6   lost in prison.

7        Please remember I recognize that this is his first

8   offense on a criminal record stance.  This is not a single

9   incident and it is not a lapse in judgment.  Cameron chose day

10  after day for more than 730 days to abuse my daughter from the

11  tiny age of 15 months to create, share, download and possess

12  child pornography and to encourage others all over the world

13  to sexually abuse and exploit their own children.

14       Cameron showed no signs of stopping with hundreds and

15  hundreds of logins in the days leading up to his arrest and

16  his actions only escalated over the years.

17       I beg you to impose a life sentence to keep my daughter

18  and other children safe, to prevent him from ever having the

19  opportunity to hurt another child, and to set the standard

20  that predators -- for predators that these reprehensible

21  behaviors will not be accepted.  Thank you.

22            THE COURT:  Thank you for your statement and you've

23  shown great courage in doing so.

24            COURTNEY McABEE:  Thank you.

25            THE COURT:  Thank you.  All right.  The court is

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 22 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 22

22

 1   going to take a short recess.  I'll be back in just a moment.

 2       (RECESS TAKEN.)

 3           THE COURT:  All right.  Do the parties wish to make

 4   any final statements regarding sentencing?

 5           MR. NASSAR:  No, Your Honor.

 6           THE COURT:  Mr. Dunn?

 7           MR. DUNN:  No, Your Honor.

 8           THE COURT:  Does Mr. McAbee wish to make any final

 9   statements?

10           THE DEFENDANT:  No, Your Honor.

11           THE COURT:  All right.  Given the nature of the

12   instant offenses including defendant's utter disregard for his

13   parental relationship with his daughter, her online exposure

14   to future child pornography defendants, defendant's

15   participation and leadership in the sexual abuse and

16   exploitation of at least eight other children, a guideline

17   sentence is appropriate in this case and defendant's request

18   for a variance is denied.  I do not find any factors in this

19   case to separate the defendant from the mine-run of similarly

20   situated defendants.

21       This court recognizes that the United States Sentencing

22   Guidelines are advisory and not mandatory but nonetheless I

23   have considered the guidelines along with all the factors set

24   forth in Title 18 U.S.C. Section 3553(a) to reach what I

25   believe will be an appropriate and reasonable sentence in this

1  case.

2      In determining a sentence I've considered the nature and

3  circumstances of the offense, I've considered Mr. McAbee's

4  personal characteristics, his lack of criminal history.  I've

5  considered the guideline calculations and I've considered

6  sentence disparities among defendants.

7      This case involved the defendant between approximately

8  July 1, 2019, and July 26, 2021, engaging in child

9  exploitation enterprise across several internet forum sites

10  where group members exchanged numerous images and videos

11  depicting the rape and molestation of children.

12      Defendant acted as an administrator in at least some of

13  these groups where he granted other members admission to the

14  group after requiring them to show proof of access to a child

15  victim by sharing images or video of the sexual abuse of that

16  child.

17      Additionally defendant produced sexually explicit videos

18  and images of his three-year-old daughter and younger which

19  were shared and distributed to other members of the enterprise

20  beginning when his daughter was just 18 months old.

21      To obtain additional pictures and videos of his daughter

22  defendant installed multiple hidden cameras throughout the

23  house.  Defendant possessed and distributed sexually explicit

24  images of his daughter as well as other child victims,

25  including his niece, totaling 1,309 visual depictions of child

1   sexual abuse materials in his possession at the time of his

2   arrest.  Although he has not received an official diagnosis

3   defendant reported a history of depression and body

4   dysmorphia.

5         Based upon these factors a sentence within the advisory

6   guideline range this court believes is more than sufficient

7   and reasonable but not greater than necessary to meet the

8   requirements and objectives set forth in Title 18 U.S.C.

9   Section 3553(a).  This sentence will reflect the seriousness

10  of the offense, serve as an adequate deterrent to this

11  defendant, promote respect for the law and provide just

12  punishment for the offense.

13        It will also provide protection for the public and other

14  children throughout the community from further crimes by this

15  defendant.  It will provide correctional treatment for the

16  defendant in the most effective manner.

17        If ever released from prison a term of supervised release

18  with appropriate special conditions based upon these factors

19  is appropriate and will allow defendant to be monitored for

20  future law violations and receive appropriate mental health

21  and sex offender treatment.  Restitution is mandatory and will

22  be ordered by this court.

23        Mr. McAbee, would you approach the podium with your

24  counsel, sir.  Mr. McAbee, you appear before the court today

25  for the purpose of sentencing having previously pled guilty to

1    Counts 1, 2, 3 and 4 of the indictment charging you with child

2    exploitation enterprise in violation of Title 18 U.S.C.

3    Sections 2252A(g)(2) and (g)(1).  Sexual exploitation of a

4    child by a parent, in violation of Title 18 U.S.C. Section

5    2251(b) and (e).  Receipt and distribution of child

6    pornography, in violation of Title 18 U.S.C. Section

7    2252(a)(2) and (b)(1).  And possession of child pornography in

8    Indian Country, in violation of Title 18 U.S.C. Section

9    2252(a)(4) and (b)(2).

10        In accordance with applicable law it is the order and

11   judgment of this court that you, Cameron Kelly McAbee, are

12   hereby committed to the custody of the Bureau of Prisons to be

13   imprisoned for a term of the remainder of your life.  Said

14   sentence shall consist of life as to Count 1, 360 months as to

15   Count 2.  240 months as to each of Counts 3 and 4.  All counts

16   shall run concurrently each with the other.

17        The court recommends the Bureau of Prisons evaluate and

18   determine whether you are a suitable candidate for the most

19   comprehensive mental health and sex offender treatment program

20   available to you during your term of incarceration.  If you

21   are ever released from prison, and, sir, I really frankly hope

22   that you are not, you shall be placed on a term of supervised

23   release for a term of life as to each of Counts 1, 2, 3 and 4.

24   All counts shall run concurrently each with the other.

25        Should the term of supervised release be revoked, an

Case 4:21-cr-00361-JFH  Document 69  Filed 10/26/23  Page 26 of 31
Appellate Case: 23-5097  Document: 010110958406  Date Filed: 11/27/2023  Page: 26

26

 1  additional term of imprisonment of up to five years as to each

 2  of Counts 1, three -- as to each of Counts 1, three years as

 3  to Count 2, and two years per count as to each of Counts 3 and

 4  4 could be imposed at revocation.

 5      Should you ever be released from custody, you must report

 6  immediately to the United States Probation Office in the

 7  district where you are authorized to reside and you must do so

 8  within 72 hours.

 9      While on supervised release, if you ever get there, you

10  must not commit another federal, state or local crime.  You

11  must not own, possess, or have access to a firearm,

12  ammunition, destructive device, or any other dangerous weapon.

13      You must at the direction of the United States Probation

14  Office cooperate with and submit to the collection of a DNA

15  sample for submission to the Combined DNA Index System.

16      You must not possess a controlled substance and you must

17  refrain from any unlawful use of a controlled substance.  You

18  must submit to one drug test within 15 days of your release

19  from custody.  Thereafter you shall submit to at least two

20  additional periodic drug tests not to exceed eight tests per

21  month.

22      You must comply with the standard conditions that have

23  been adopted by this court and/or as set out in the judgment

24  and you must comply with the following additional special

25  conditions:  Conditions 1 through 9 of the special sex

1  offender conditions.

2       You are prohibited from attempting to have or having any

3  contact whatsoever with S.M.  That is the victim in this case

4  and unfortunately and sadly was your daughter.  You must not

5  do so directly or indirectly, in person, through others, by

6  telephone, mail, electronic means or any other manner at any

7  time or any place unless specifically authorized by this

8  court.  You shall remain 100 yards away from her, her place of

9  residence, her place of employment or school at all times.

10       You shall pay restitution in the amount of $26,610.  Of

11  said amount $14,610 is due and owing to S.M. in care of

12  Courtney McAbee for past and future counseling and relocation

13  expenses agreed to by you in the plea agreement.

14       Additionally $3,000 is due and owing to each of the four

15  victims, Pia, Tara, Mother Full 20121 DJMW, and April, who

16  have requested restitution based upon the proximate harm you

17  caused in the receipt and further distribution of sexually

18  explicit materials pursuant to Title 18 U.S.C. Sections 2259.

19  Consistent with Title 18 U.S.C. Section 3664(I) S.M. shall

20  receive first priority in your repayment of restitution.

21       This restitution shall be paid through the United States

22  Court Clerk for the Northern District of Oklahoma.  Any

23  monetary penalty is due in full payable immediately but also

24  payable on a schedule to be determined pursuant to the policy

25  provisions of the Federal Bureau of Prisons Inmate Financial

1   Responsibility Program while in prison if you voluntarily

2   participate in this program.

3        If you are ever released from prison and a monetary

4   balance remains, payment shall commence no later than 60 days

5   following your release from custody to a term of supervised

6   release.  You shall make equal monthly payments of $100 or 10

7   percent of your net income, whichever is greater, over the

8   duration of your term of supervised release and thereafter as

9   prescribed by law as long as some debt remains.

10       Notwithstanding establishment of a payment schedule

11  nothing shall prohibit the United States from executing or

12  levying upon your property discovered before or after the date

13  of this judgment.

14       Based upon your financial profile as outlined in the

15  presentence report the court finds that following the order of

16  mandatory restitution you will not have the ability to pay a

17  fine and therefore no fine is imposed.

18       Based upon your financial profile in the presentence

19  report the court finds that following the order of mandatory

20  restitution you do not have the ability to pay a fine due to

21  being indigent, therefore the court does not impose a fine or

22  special monetary assessment pursuant to Title 18 U.S.C.

23  Sections 3014 or 2259A.

24       You shall, however, pay a mandatory special monetary

25  assessment of $100 per count for a total of $400.  This

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 29 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 29

29

1    assessment is to be paid immediately to the United States

2    Court Clerk for the Northern District of Oklahoma.  The court

3    further order says that the order of forfeiture at docket

4    number 40 is hereby incorporated by reference.

5        You have, Mr. McAbee, inflicted a wake of devastation and

6    destruction and it is -- I think most people would say why.  I

7    mean you had everything going for you.  You had a wonderful

8    wife, you had a wonderful daughter.  And the only way to

9    describe it is it's just evil.  Somehow you let evil take over

10   your life.  And can you turn from that?  I don't know.  I hope

11   so but you're not going to do it among the public.  You maybe

12   need to seek forgiveness in redemption and maybe that can be

13   given to you but it's not given to you by this court today,

14   sir.

15       I only hope that the suffering that you've caused will

16   lead to perseverance.  And it seems that it is doing so.

17   Ms. McAbee is persevering.  She is demonstrating her character

18   and I only hope that S.M. will demonstrate perseverance and

19   character and that they will find that that will lead them to

20   hope.

21       I do not know your character, sir, but the character

22   that's been reflected to me is not very good and that is very

23   sad.  Do you have hope?  I don't know.  I hope you find it.

24       That's all I have to say to you, sir.  I just -- it's

25   hard for me to imagine.  It's just hard for me to imagine but

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 30 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 30

30

1  you have no business being around any child ever again.

2      Mr. McAbee, I have a duty to advise you that subject to

3  any waiver of appellate and post-conviction rights that may be

4  contained in your plea agreement you may have a right to

5  appeal the sentence that has been imposed.  Any such appeal

6  must be filed within 14 days of the date the judgment is

7  entered.

8      If you wish to appeal and cannot afford an appeal, there

9  are forms in the clerk's office to request to appeal without

10 prepayment of costs, and Mr. Dunn will remain your counsel

11 during this 14-day time of appeal.

12     Mr. Dunn, do you have anything further on behalf of your

13 client today, sir?

14         MR. DUNN:  No, Your Honor.

15         THE COURT:  Mr. Nassar, anything further on behalf

16 of the government?

17         MR. NASSAR:  No, Your Honor.

18         THE COURT:  All right.  Defendant is remanded to the

19 custody of the United States Marshals Service.  Court is

20 adjourned.

21     (PROCEEDINGS CONCLUDED.)

22

23

24

25

Case 4:21-cr-00361-JFH   Document 69   Filed 10/26/23   Page 31 of 31
Appellate Case: 23-5097   Document: 010110958406   Date Filed: 11/27/2023   Page: 31

31

1

2                          **REPORTER'S CERTIFICATION**

3           I CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE

4    TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

5                   CERTIFIED:          S/Laura Griffin
                                    Laura Griffin, RMR, CRR
6                                   United States Court Reporter
                                    333 W. 4th Street, RM 411
7                                   Tulsa, OK  74103
                                    (918) 699-4879
8                                   laura_griffin@oknd.uscourts.gov.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25